UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM TONY MULLIS, JR.,

    Plaintiff,

v.                                            Case No. 8:22-cv-1409-KKM-AAS

CLARK, et al.,

    Defendants.

_____

## ORDER

William Tony Mullis, Jr., sues four Pinellas County detention deputies and alleges that they used excessive force on him when he was booked into the Pinellas County Jail. The parties have filed cross motions for summary judgment. (Docs. 112, 126.) For the reasons below, I grant Defendants' motion and deny Mullis's motion.

## I.    BACKGROUND

The following factual summary is based on the record evidence submitted by the parties. Defendants supported their summary-judgment motion with jail records, arrest records, and sworn affidavits from all four deputies. (Doc. 126-1.) Mullis did not submit an affidavit to support his version of events. Nor did he sit for a deposition. Instead, he filed a "memorandum of law" that repeats the allegations of the operative complaint. (Doc. 103 at 4–9, 17–20.) Neither the operative complaint nor the memorandum was sworn under oath. (Docs. 41, 103.) And Mullis never

1

verified that his assertions were true under penalty of perjury. Thus, his unsworn statements cannot be considered on summary judgment. *See Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) ("Unsworn statements . . . cannot be considered by a district court in ruling on a summary judgment motion."); *see also Roy v. Ivy*, 53 F.4th 1338, 1348 (11th Cir. 2022) (noting that "an unsworn statement" cannot "substitute for a sworn affidavit" unless the declarant "subscribe[s] its content as 'true' [] under 'penalty of perjury'").

### A. February 10, 2021 Booking

On February 10, 2021, Mullis was arrested for disorderly intoxication in Treasure Island, Florida. (Doc. 126-2 at 7.) According to the arrest affidavit, he had tried to "fight" an employee at a store on Gulf Boulevard. (*Id.* at 17.) During the incident, Mullis "appeared intoxicated" and was "yelling and stumbling around." (*Id.*) After his arrest, Mullis was taken to the Pinellas County Jail, where he "immediately" began to "spontaneously yell[]." (*Id.* at 27; *see also* Doc. 126-5 at 1.) Jail staff told Mullis to "stop." (Doc. 126-5 at 2.) He complied "for a time" but "then resume[d] his disruptive conduct." (*Id.*) Thus, Mullis was "deemed uncooperative," which meant that he would not "complet[e] the normal intake, receiving, and classification process and instead would be sent directly to a housing unit." (*Id.*)

A nurse evaluated Mullis. (Doc. 126-2 at 27.) He "refused" to respond to her questions about "whether he was suicidal." (*Id.* at 30.) So she deemed him a "suicide risk." (*Id.*) That designation meant that Mullis would be housed in the "medical unit." (Doc. 126-5 at 2.) Deputies Ryan Klinect and

2

Daniel Carron took Mullis to a holding cell and exchanged his clothing for a "jail-issued uniform." (*Id.*; *see also* Doc. 126-6 at 2.) This occurred "without incident." (Doc. 126-5 at 2; Doc. 126-6 at 2.)

Next, Deputy Anthony Clark arrived to assist Deputies Klinect and Carron with escorting Mullis to the medical unit. (*Id.*) To ensure Mullis's safety and "the safety and security of jail staff and other inmates," the three deputies handcuffed Mullis and strapped him into a wheelchair. (Doc. 126-7 at 2.) They then transported him to the medical unit. (*Id.*; Doc. 126-5 at 2; Doc. 126-6 at 2.) This too occurred "without incident." (Doc. 126-5 at 3.) Inside the medical unit, the deputies placed Mullis in a cell, removed his handcuffs, and exchanged his jail clothes for a "paper gown" worn by "inmates on observation because of suicide risk." (*Id.*) The deputies did not use any "force" during this process. (*Id.*; Doc. 126-6 at 2.)

Mullis was released from the jail on February 22, 2021, having completed a time-served sentence for disorderly intoxication. (Doc. 126-2 at 68.)

### B. February 26, 2021 Booking

Four days after his release, Mullis was arrested again, this time for felony petit theft. (*Id.* at 70.) According to the arrest affidavit, Mullis stole a beer can from a convenience store in Largo, Florida. (*Id.*) After his arrest, Mullis was taken to the Pinellas County Jail. (Doc. 126-5 at 4.) Deputy Klinect, who was handling "intake" that day, observed that Mullis was "bleeding from his eyebrow" when he arrived. (*Id.*) A nurse evaluated

3

Mullis and determined that he had suffered a "head injury" due to a "fall" in the inmate transport van.[1] (Doc. 126-2 at 74.) The nurse also noted that he appeared "intoxicated" and "lethargic." (*Id.*)

Jail staff called 911, and "emergency personnel arrived to take . . . Mullis to the hospital." (Doc. 126-5 at 4–5.) Deputy Klinect secured Mullis to a gurney—"standard protocol for staff and inmate safety, and the safety of the civilian medical personnel." (*Id.* at 5.) Deputy Lyndon Kirkland accompanied Mullis to the hospital. (Doc. 126-8 at 2.) This was "uneventful." (*Id.*) Deputy Kirkland needed to "touch[]" Mullis while handcuffing him and moving him around during the "transport and hospital admission." (*Id.*) But Deputy Kirkland "did not use force" on Mullis. (*Id.*) Mullis was discharged from the hospital the next day and returned to the jail. (Doc. 126-4 at 3.)

### C. Procedural History

Mullis brought this action in June 2022. (Doc. 1.) After several rounds of amendments, Mullis filed his third amended complaint, which became the operative pleading. (Docs. 1, 21, 41.)

In the third amended complaint, Mullis asserts excessive-force claims against Deputies Klinect, Clark, Carron, and Kirkland. (Doc. 41 at 2–4.) He alleges that during the February 10 booking, Deputies Klinect and Carron used "unnecessary excessive force with [their] hands/knees/body weight," and Deputy Clark "twisted" his "left thumb." (*Id.* at 5.) Mullis separately

---

[1] Mullis has not sued anybody involved in transporting him to the jail.

4

alleges that during the February 26 booking, Deputies Klinect and Kirkland "unnecessar[ily]" applied "restraints" and pushed his "head and face" into a "concrete structure." (*Id.* at 12.) As I noted earlier, the third amended complaint is neither sworn nor verified.[2]

Defendants filed an answer, and I entered a case management and scheduling order. (Docs. 85, 87.) Following discovery, both Mullis and Defendants moved for summary judgment. (Docs. 112, 126.) I warned Mullis that "a party opposing a summary judgment motion must offer more than denials; he must present evidence establishing a factual dispute as to the material raised in the motion for summary judgment." (Doc. 127 at 1.) Despite this warning, Mullis submitted no evidence to support the unsworn allegations in the third amended complaint.

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats*

---

[2] Mullis's earlier complaints are also unsworn and unverified. (Docs. 1, 21, 35.)

*& Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

I review the record evidence as identified by the parties and draw all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Here, to the extent that the record is disputed or capable of multiple inferences, I draw them in favor of the non-movant.

### III.  ANALYSIS

Defendants argue that they are entitled to qualified immunity because they did not use "constitutionally actionable" force during the February bookings. (Doc. 126 at 13–21.) This version of events is supported by the deputies' sworn affidavits. Mullis tells a different story, but he submitted no evidence to support his unsworn assertions. Thus, I find that Defendants are entitled to qualified immunity and grant their motion for summary

judgment. For the same reason—i.e., the absence of any evidence of excessive force—I deny Mullis's motion for summary judgment.[3]

"To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his [] discretionary authority when the challenged action occurred." *Patel v. City of Madison*, 959 F.3d 1330, 1338 (11th Cir. 2020). Once that showing is made, the burden shifts to the plaintiff "to demonstrate that qualified immunity is inappropriate." *Id*. To do so, the plaintiff must establish (1) that, "when viewed in the light most favorable to him, a material question of fact exists about whether [the officer] violated [his] constitutional right to be free from the use of excessive force," and (2) that the plaintiff's "right was clearly established in . . . the specific context of the case." *Id.* (internal quotation marks omitted).

There is no dispute that Defendants were acting within the scope of their authority. So the burden shifts to Mullis to show that qualified immunity is inappropriate. He has not done so.

---

[3] Defendants also argue that Mullis failed to exhaust his administrative remedies. (Doc. 126 at 11–13.) The "exhaustion requirement is not jurisdictional," which means that "a district court [may] dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 101 (2006). Because Defendants are entitled to qualified immunity, I decline to address the exhaustion issue. *See Simmons v. Monserrate*, 489 F. App'x 404, 405 n.2 (11th Cir. 2012) ("Because the failure to exhaust . . . is an affirmative defense, not a jurisdictional limitation, we choose to address to the merits of [plaintiff's] Eighth Amendment claim rather than delve into the exhaustion issue, since relief is due to be denied on the merits of the claim." (citation omitted)).

The Fourteenth Amendment "guards against the use of excessive force against arrestees and pretrial detainees." *J.W. v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018). To prove an excessive-force claim, the plaintiff must show that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). The "application of de minimis force, without more, will not support a claim for excessive force." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1326 n.30 (11th Cir. 2017); *see also Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir. 2021) (applying the "de minimis principle" to excessive-force claim brought by pretrial detainee). This rule reflects the reality that "not every intrusion, touching, discomfort[,] or embarrassment . . . is actionable" as a constitutional violation. *Hicks v. Moore*, 422 F.3d 1246, 1253–54 (11th Cir. 2005).

According to Defendants' sworn testimony, any force used on Mullis was de minimis. During the February 10 booking, Mullis was "deemed uncooperative" because he refused to stop yelling. (Doc. 126-5 at 2.) He was also deemed a "suicide risk" because he refused to answer a nurse's questions about "whether he was suicidal." (Doc. 126-2 at 30.) As a result, jail staff decided to house Mullis in the "medical unit." (Doc. 126-5 at 2.) Deputies Klinect and Carron took Mullis to a holding cell and exchanged his clothing for a "jail-issued uniform." (*Id.*; *see also* Doc. 126-6 at 2.) This occurred "without incident." (Doc. 126-5 at 2; Doc. 126-6 at 2.)

8

Then, to ensure Mullis's safety and "the safety and security of jail staff and other inmates," Deputies Clark, Klinect, and Carron handcuffed Mullis and strapped him into a wheelchair. (Doc. 126-7 at 2.) They proceeded to transport him to the medical unit. (*Id.*; Doc. 126-5 at 2; Doc. 126-6 at 2.) This too occurred "without incident." (Doc. 126-5 at 3.) Inside the medical unit, the deputies removed Mullis's handcuffs and exchanged his jail clothes for a "paper gown." (*Id.*)

Two weeks later, during the February 26 booking, Mullis arrived at the jail with a "head injury" due to a "fall" in the transport van. (Doc. 126-2 at 74.) Soon after, "emergency personnel arrived to take . . . Mullis to the hospital." (Doc. 126-5 at 4–5.) In accord with "standard" safety protocol, Deputy Klinect secured Mullis to a gurney. (*Id.* at 5.) Deputy Kirkland then accompanied Mullis to the hospital. (Doc. 126-8 at 2.) This was "uneventful." (*Id.*) At most, Deputy Kirkland "touch[ed]" Mullis while handcuffing him and moving him around during the "transport and hospital admission." (*Id.*)

Viewed in the light most favorable to Mullis, this testimony establishes that "there was very little 'force' used and essentially no harm done." *Crocker*, 995 F.3d at 1251. To ensure inmate and staff safety, Defendants handcuffed Mullis, strapped him to a wheelchair and a gurney, and held him while maneuvering him around the jail and the hospital. Such minor physical contact is "too slight" to support an excessive-force claim. *Hicks*, 422 F.3d at 1254; *see also Boyd v. Bush*, No. 2:07-cv-524-MEF, 2011 WL 4101509, at *17 (M.D. Ala. July 11, 2011) (no constitutional violation where "[t]he officers

9

used only the amount of force necessary under the circumstances to remove [plaintiff] from his cell and transport him for examination by a health care professional"), *adopted by* 2011 WL 4101467 (M.D. Ala. Sept. 14, 2011).

    Mullis presents a different version of events, but I cannot credit his allegations because he submitted no competent evidence to support them. As I explained earlier, the third amended complaint is neither sworn nor verified. (Doc. 41.) The same is true of Mullis's "memorandum of law." (Doc. 103.) Thus, the unsworn assertions in those filings cannot be considered for purposes of summary judgment. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) ("Although pro se litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials."); *Liebman v. Metro. Life Ins. Co.*, 708 F. App'x 979, 983 n.3 (11th Cir. 2017) ("[A]t summary judgment, a party cannot rely solely on allegations from an unverified complaint."). And Mullis points to no other evidence from which a reasonable jury could infer that Defendants used excessive force during the February bookings. With no evidence to support his allegations, Mullis cannot create "a material question of fact . . . about whether [Defendants] violated [his] constitutional right to be free from the use of excessive force." *Patel*, 959 F.3d at 1338. Therefore, Defendants are entitled to qualified immunity.

## IV. CONCLUSION

    Accordingly, it is **ORDERED** that:

10

1. Defendants' Motion for Summary Judgment, (Doc. 126), is **GRANTED**.

2. Mullis's Motion for Summary Judgment, (Doc. 112), is **DENIED**.

3. The **CLERK** is directed to enter judgment in Defendants' favor, to terminate any pending motions and deadlines, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on June 26, 2025.

_Kathryn Kimball Mizelle_
Kathryn Kimball Mizelle
United States District Judge